IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-335-BO

| | | |
|---|---|---|
| GINA Y. FRANCIS, | ) | |
|           Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MARK T. ESPER, | ) | |
| Secretary, U.S. Dept. of Army, | ) | |
|           Defendant. | ) | |

This cause comes before the Court on defendant's motion for summary judgment and motion to strike. The appropriate responses and replies have been filed, or the time for doing so has expired, and the motions are ripe for ruling. A hearing on the matters was held before the undersigned on April 18, 2018, at Raleigh, North Carolina. For the reasons that follow, defendant's motion to strike is denied and defendant's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Plaintiff, Gina Francis, initiated this action by filing a complaint in this Court on September 28, 2016, alleging claims under Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended. 42 U.S.C. § 2000e, *et seq.*; 29 U.S.C. § 621, *et seq.* Plaintiff, an African American female born in 1958, worked as the sole civilian Veterinary Medical Officer at the Veterinary Treatment Facility at Camp Lejeune in Onslow County, North Carolina from August 1, 2005, to June 9, 2011. For the rating periods of September 1, 2008, to August 31, 2009, and September 1, 2009, to August 31, 2010, plaintiff received excellent or outstanding performance ratings. [DE 21-1]. On January 11, 2010, plaintiff was

counseled by Captain Angelina Gerardo (Gerardo), regarding record-keeping deficiencies. [DE 19-2 at 33].[1] Plaintiff was counseled on May 12, 2010, by Captain Lavallee for inadvertent breakage of a vial of narcotics. *Id.* at 35.

Beginning in the summer of 2010, Captain Alberto Bonfiglio (Bonfiglio), a white male, became plaintiff's first-line supervisor and Gerardo became Bonfiglio's supervisor. *See id.* at 144; 162. On January 12, 2011, plaintiff was counseled by Bonfiglio regarding medical record-keeping, and was counseled again on January 24, 2011, regarding her failure to implement procedures discussed at her January 12th counseling. [DE 19-2 at 42-45].

Plaintiff's father was hospitalized from December 11 through December 16, 2010, after which he was transferred to a nursing home. [DE 19-3 at 182]. On January 29, 2011, plaintiff's father passed away. *Id.* On April 26, 2011, Gerardo provided to plaintiff a proposed letter of separation signed by Bonfiglio. [DE 19-2 at 49-50]. Plaintiff responded in opposition to the proposed separation. *Id.* at 51-56. Plaintiff was separated from her employment with the Army on June 9, 2011. *Id.* at 64-65]. In her complaint, plaintiff alleges claims for race, sex, and age discrimination as well hostile work environment.

## DISCUSSION

At the outset, the Court denies defendant's motion to strike plaintiff's response to the motion for summary judgment for having been filed out of time. Striking is a drastic remedy that is generally disfavored and not presently appropriate. *See* Fed. R. Civ. P. 12(f); *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001).

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[1] Citations to defendant's appendix of exhibits [DE 19] refer to the appendix page numbers.

56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under Title VII, there are two avenues through which a plaintiff may avoid summary judgment. First, a plaintiff may proceed under the mixed-motive framework by presenting direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc) (*abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). Under the mixed-motive theory, a plaintiff need only demonstrate "'a stated purpose to discriminate and/or indirect evidence of sufficient probative force to reflect a genuine issue of material fact.'" *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 607 (4th Cir. 1999) (alteration and quotation omitted).

3

"The second method of averting summary judgment is to proceed under a 'pretext' framework, under which the employee, after establishing a prima face case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973)). To establish a prima facie case of employment discrimination, plaintiff must show (1) that she is a member of a protected class; (2) who suffered an adverse employment action; (3) that at the time of the adverse action she was performing at a level that met her employer's legitimate expectations; and (4) the position remained open or was filled by similarly qualified applicants outside plaintiff's protected class. *Hill*, 354 F.3d at 285. "The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1973)).

Plaintiff appears to proceed under the pretext framework. [DE 20]. Defendant concedes that plaintiff satisfies the first and third elements of her prima facie case – that is, that plaintiff is a member of a protected class or classes and that her termination was an adverse employment action. Defendant relies on plaintiff's record-keeping errors as evidence of both plaintiff's unsatisfactory job performance and his legitimate, nondiscriminatory reason for terminating plaintiff's employment. In response to the summary judgment motion, plaintiff has submitted the following evidence. Staff Sergeant Dawn Torrisi (Torrisi), the NCOIC[2] at the veterinary clinic, testified that when she reviewed all charts for charting errors plaintiff appeared to have no more mistakes than any of the military veterinarians. [DE 21-5] Torrisi Test. at 269, 273. Torrisi

---

[2] This designation appears to refer to non-commissioned officer in charge.

4

testified that she heard Bonfiglio refer to civilian staff as "his minions" and stated that that most of her staff was offended by Bonfiglio's comments. Torrisi Test. at 273. Torrisi heard Bonfiglio request to only see patient-animals with attractive owners on a regular basis. Torrisi Test. at 275. Bonfiglio apparently made the same if not more mistakes in record-keeping as plaintiff but was not counseled for those or other mistakes. Torrisi Test. at 280-81. Finally, as to plaintiff's termination, Torrisi testified as follows:

> A. [Torrisi] The termination letter, if you – I'm sure you've read it. It's ridiculous.
> Q. Why is it ridiculous?
> A. [Torrisi] She's a – she's a professional. And that entire letter focuses on her ability to . . . dot her Is and cross her Ts in a medical record. Given the 30 minutes that she has to see appointments, I expect mistakes because that's a ridiculous amount of time to have seen a patient if you have to do a full medical workup. . . . And the worst thing that happened was a couple of errors in the medical record. . . I don't think he [Bonfiglio] wanted her there. I think he wanted somebody new that he could make his little minion, literally.

Torrisi Test. at 300-301.

The clinic receptionist, Michelle Evans (Evans), testified that in early April 2011 Gerardo informed staff that they would not have to deal with plaintiff much longer; Evans also had been told that plaintiff's job had been offered to another veterinarian by the office manager just before Easter and prior to plaintiff's termination in June. [DE 21-3] Evans Test. at 208. Evans testified that Bonfiglio never asked that any of the military veterinarians' records be pulled for record-checks, only that plaintiff's records be checked. *Id.* at 210. Evans testified that she saw many mistakes in Bonfiglio's charting, and that plaintiff had not made many mistakes in her record-keeping from March 18th to June 9th, just prior to her termination. *Id.* at 220.

Although defendant argues that it was Gerardo and not Bonfiglio who was responsible for plaintiff's termination, Bonfiglio signed plaintiff's termination notice as the requesting officer and Torrisi testified that Bonfiglio drafted and prepared plaintiff's termination papers while she and

Bonfiglio were on temporary duty in Japan. Torrisi Test. at 278. Additionally, as to the final element of plaintiff's prima facie case, the record reflects that, at least as of March 20, 2012, the civilian veterinary position remained open or unfilled. [DE 21-4] Minerva Test. at 243. The same testimony reveals that Bonfiglio attempted to fill plaintiff's position with his girlfriend but was told he was not allowed to do so. *Id.*

While it is the perception of the decision-maker that is relevant to the determination of whether a plaintiff is performing her job satisfactorily, *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996), the Court finds that the evidence proffered by plaintiff creates a genuine issue of material fact as to whether plaintiff was treated less favorably because of her race, gender, and/or age. Indeed, the *McDonnell Douglas* framework "was never intended to be rigid, mechanized, or ritualistic." *Furnco Const.*, 438 U.S. at 577. Here, plaintiff has submitted sufficient evidence to survive summary judgment and to allow a jury to make a determination as to whether she was performing her job satisfactorily and whether her employer's proffered basis for her termination was mere pretext for discrimination. Summary judgment is therefore denied as to plaintiff's claims for race, gender, and age discrimination.

Summary judgment in defendant's favor is, however, appropriate as to plaintiff's hostile work environment claim. Before a party may file suit under Title VII, she is required to file a charge with the Equal Employment Opportunity Commission. *See* 42 U.S.C. § 2000e-5(f)(1). The scope of a discrimination lawsuit is limited to the scope of a plaintiff's discrimination charge as investigated by the EEOC or appropriate deferral agency. *Evans*, 80 F.3d at 962–63. "If the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko v. Patuxent Institution*, 429 F.3d 505, 509 (4th Cir. 2005). While courts typically construe the administrative

charges liberally, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Here, plaintiff alleged discrimination based on age, race/seniority, and gender in her formal charge of discrimination. [DE 19-2 at 23-27]. Plaintiff has failed to present any substantive argument that her hostile work environment claim is encompassed by her age, race, and gender discrimination claims. *See* [DE 20]. Although the conduct forming the basis of plaintiff's hostile work environment claim is the same as that forming the basis of her age, race, and sex discrimination claims, *compare Chacko* (claims involved different conduct and different evidence), plaintiff's allegations in her EEOC charge of inappropriate comments made generally by Bonfiglio were insufficient to put defendant on notice of a hostile work environment claim. *See, e.g., Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 864 (D. Md. 2015) (noting comments, although objectionable, not directed at plaintiff cannot support a hostile work environment claim).

## CONCLUSION

For the foregoing reasons, defendant's motion to strike [DE 22] is DENIED and defendant's motion for summary judgment [DE 16] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this $\underline{16}$ day of May, 2018.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE